UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LINA SHAW, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>REGAL-BELOIT AMERICA, INC.,)<br>)<br>Defendant. ) | Civil Action No.: 21- |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, Linda Shaw, by and through her attorneys, NACHTLAW, P.C., brings this action against Defendant Regal-Beloit America, Inc., and hereby alleges as follows:

## INTRODUCTION

1. Plaintiff Linda Shaw brings this civil rights action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), to remedy illegal discrimination and retaliation perpetrated by Defendant.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to the ADEA, 29 U.S.C. § 621 *et seq*. (age discrimination); Title VII, 42 U.S.C. § 2000e *et seq*. (sex

1

discrimination); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

3. This Court also has jurisdiction of all claims pled herein pursuant to 28 U.S.C. §1332 as there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000, exclusive of costs, interests, and attorney fees.

4. Venue is proper in the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within Fort Wayne, Indiana, located within this judicial district.

5. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the bases of her age, sex, and retaliation. Plaintiff received her notice of right to sue on or about April 26, 2021.

## PARTIES

6. Plaintiff Linda Shaw is a former employee of Regal Beloit America, Inc. and a resident of Fort Wayne, Indiana.

7. Defendant Regal Beloit America, Inc. ("Regal") is a Wisconsin corporation with its principal place of business in Beloit, Wisconsin and doing business in Allen County within this judicial district.

## FACTUAL ALLEGATIONS

8. At the time relevant to this action Plaintiff was fifty-nine (59) years old.

9. Plaintiff began working for Regal as a Vice President of Global Sourcing and Logistics in 2010.

10. In 2015, Plaintiff became Vice President of Regal's Climate area HVAC business.

11. At all times during her employment with Regal, Plaintiff performed her job diligently and competently and was well-qualified for the positions she held.

12. Over almost a decade at Regal, Plaintiff received generally high-performance ratings.

13. As Vice President of Climate HVAC, Plaintiff increased the HVAC businesses' profits and successfully launched critical product lines.

14. In 2019, Plaintiff successfully navigated significant regulatory changes related to furnaces and launched a new compliant product line.

15. Under Plaintiff's leadership, the HVAC business' profits increased significantly.

16. Plaintiff regularly met defined business and sales goals, and the HVAC business' performance was consistently better than that of other business areas in the Climate area.

17. Overall, the HVAC business accounted for approximately 43% of the Climate area's total sales.

**Regal Subjects Plaintiff to Reprisal for Opposing Sexual Harassment**

18. In June 2018, Plaintiff was sexually harassed by a colleague, Vice President of Sales for the Climate Group Pat Quilty.

19. Mr. Quilty was sitting in Plaintiff's office when he told her he wanted to be reincarnated as a cow so he could suck on "tits."

20. Mr. Quilty spoke at length about how he loved to "suck on tits."

21. Plaintiff had never heard Mr. Quilty make these types of comments to male colleagues, and they made her feel extremely uncomfortable.

22. Plaintiff reported this instance of sexual harassment to Regal's Chief Human Resources Officer at the time, Terry Colvin.

23. Ms. Colvin acknowledged the incident constituted sexual harassment, and Mr. Quilty was directed to apologize for his conduct.

24. From that point forward, Plaintiff began to receive increasingly negative performance reviews from her supervisor, John Kunze.

25. The negative aspects of these reviews primarily focused on Plaintiff's communications and behavior towards employees and peers, not her objective, economic performance.

26. Plaintiff was criticized by Mr. Kunze in part for not working well with her harasser, Pat Quilty.

27. Upon information and belief, Plaintiff's strong, straight-forward leadership style was not well received because she is a woman.

**Regal Demotes Plaintiff as Part of a Scheme to Replace Her and Other Older Executives with Younger Male Workers**

28. Starting in 2019, Regal began a reorganization of its various business units.

29. In April 2019, Regal's CEO, Mark Gliebe, retired.

30. He was replaced by Louis Pinkham, who is in his forties.

31. Almost immediately, at senior leadership meetings at which Plaintiff was present, Mr. Pinkham would discuss how old different executives were.

32. After removing Regal's Chief Human Resources Officer, Tim Oswald, Mr. Pinkham would joke that it was good that the position of Chief Human Resources Officer was unfilled, because Human Resources would not want him to be talking about employees' ages.

33. Often, he would go around the room and ask employees to introduce themselves and state how long they had been in the industry, and then make comments on their age based on their response.

34. Mr. Pinkham frequently emphasized his goal was to bring "new" or "fresh" talent, (e.g. younger employees) into key leadership roles.

35. These comments reflected Pinkham and other key Regal decisionmakers' intention and propensity to evaluate employees and make hiring

and retention decisions based on age.

36. On multiple occasions, Regal's explicit intention to hire and retain employees based on age was made overt.

37. For example, in early 2020, John Kunze told Plaintiff Regal needed someone "younger" as a director in the Climate HVAC business, in order to eventually replace Plaintiff.

38. In March of 2020, Tammy Randall also made explicit reference to Regal having found "younger" talent for the Director role.

39. In June 2019, Plaintiff was demoted, one level, from a "Level 30" to a "Level 27."

40. Plaintiff was given no notice she was demoted, despite the significant impact this would have on her incentive-based compensation at the end of the year.

41. Despite her demotion, Plaintiff continued to perform the job duties of the Vice President of the Climate HVAC Business.

42. Plaintiff only discovered she had been demoted in November 2019, when she was informed she was no longer subject to insider-trading limitations for senior executives.

43. Then, in February 2020, Plaintiff was placed on a 30-day performance improvement plan ("PIP"), focused not on her objective performance but solely on how she communicated with her employees and peers.

44. One of the stated bases for the PIP was a failure to "work with" Sales Mangers, including Plaintiff's harasser, Pat Quilty.

45. Plaintiff successfully completed all PIP requirements within 30 days and was removed from the PIP.

46. But, in March 2020, for the first and only time in her tenure at Regal, Plaintiff received the lowest possible overall performance rating, "Needs Improvement", in her 2019 annual performance review.

47. Then, in June 2020, Plaintiff was terminated, allegedly when her position was eliminated as part of a reduction in force ("RIF") due to the financial impact of COVID-19.

48. Regal initially shifted Plaintiff's job duties and responsibilities primarily to Stuart Gatley, 58, who, despite Regal's claim that Plaintiff's position was eliminated, held a remarkably similar title to Vice President of HVAC.

49. Upon information and belief, this decision was made in order to obscure Regal's explicit goal of replacing older workers with younger workers, because only five months later Mr. Gatley was removed from this role and replaced by Audwin Cash, who, upon information and belief, was substantially younger than Plaintiff.

50. Plaintiff's job duties were thus ultimately absorbed by an employee substantially younger than her.

51. The elimination of Plaintiff's position was a pretext to replace her with younger, less qualified, or similarly qualified employees.

52. Plaintiff's termination constituted an adverse employment action reflecting disparate treatment based on her age in violation of the ADEA.

53. A statistical analysis of the ages of the employees terminated by Regal during the 2019-2020 reorganization provides further evidence of age discrimination.

54. As of February 2020, over 80% of employees selected for termination were over forty.

55. Over 65% of employees selected for termination were over fifty.

56. Nearly double the proportion of Regal employees over fifty were terminated as the proportion of Regal employees under forty.

57. These statistics do not account for other older workers who were not terminated but were subjected to adverse employment actions such as demotion and/or were pushed into early retirement.

58. These statistics do not account for other older workers who were eliminated in 2019 or 2020 but not temporally classified by Regal as part of the reduction in force.

59. These statistics reflect that older employees at Regal were targeted for termination based on age, as part of a deliberate scheme to replace older executives

with younger executives.

### Regal Retaliates Against Plaintiff for Opposing Gender Discrimination by Refusing to Allow Plaintiff to Retire and Vest her Stock Options

60. In retaliation for her opposition to sex discrimination, Regal did not allow Plaintiff to retire and vest her earned stock options.

61. Other employees in a similar position, who retired around the same time but did not complain about Defendant's discriminatory practices were allowed accelerated vesting and otherwise treated differently and more favorably than Plaintiff.

62. The conduct of Defendant, as alleged in this action, constitutes willful violations of Title VII and the ADEA.

### COUNT I

### AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT 29 U.S.C. § 621 *et seq.*

63. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

64. At all relevant times, Defendant was an employer with more than 20 employees, and Plaintiff was an employee covered by and within the meaning of the ADEA.

65. Defendant, by its agents, representatives, and employees, was predisposed to discriminate on the basis of age and acted in accordance with that

predisposition.

66. Defendant subjected Plaintiff to disparate treatment in whole or in part because of her age, including but not limited to terminating Plaintiff in June 2020.

67. But for Plaintiff's age, Defendant would not have subjected Plaintiff to adverse employment actions.

68. Defendant's actions constituted unlawful discrimination against Plaintiff because of her age. 29 U.S.C. § 623(a).

69. Defendant's actions in violation of the ADEA were willful.

70. Defendant had no legitimate business reason for its actions in violation of the ADEA, which specifically prohibits discrimination against any person regarding employment and/or the terms of employment on the basis of age.

71. As a direct and proximate result of Defendant's violation of the ADEA as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

72. As a further direct and proximate result of Defendant's violation of the ADEA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

73. Defendant's actions were undertaken with callous disregard, recklessness, and indifference to Plaintiff's federally protected civil rights, entitling her to punitive damages.

## COUNT II
## SEX DISCRIMINATION IN VIOLATION OF TILE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq*.

74. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

75. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

76. Defendant by its agents, representatives, and/or employees, was predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

77. Defendant subjected Plaintiff to disparate treatment in whole or in part because of her sex, including but not limited to: terminating Plaintiff in June 2020.

78. But for Plaintiff's sex, she would not have been subjected to adverse employment actions.

79. Defendant's actions in violation of Title VII were willful.

80. Defendant had no legitimate business reason for its actions in violation of title VII, which specifically prohibits discrimination against any person regarding

employment and/or the terms of employment on the basis of sex.

81. As a direct and proximate result of Defendant's violation of Title VII as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

82. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

83. Defendant's actions were undertaken with callous disregard, recklessness, and indifference to Plaintiff's federally protected civil rights, entitling her to punitive damages.

## COUNT III
### RETALIATION IN VIOLATION OF TILE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq*.

84. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

85. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

86. Plaintiff engaged in protected activity under Title VII in opposing sex discrimination and complaining about Defendant's sexually hostile and discriminatory work environment.

87. Defendant's actions, including but not limited to Plaintiff's demotion, discipline, termination, and Defendant's refusal to let Plaintiff retire and vest her earned stick options, were motivated by unlawful retaliation against Plaintiff due to her protected activity.

88. Other employees in a similar position, who were eliminated by Defendant around the same time but did not complain about Defendant's discriminatory practices, were allowed to retire and granted accelerated vesting of their options and otherwise treated differently and more favorably than Plaintiff.

89. But for Plaintiff's opposition to sex discrimination, Defendant would not have subjected Plaintiff to such adverse employment actions.

90. As a direct and proximate result of Defendant's violation of title VII as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

91. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work,

and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

92. Defendant's actions were undertaken with callous disregard, recklessness, and indifference to Plaintiff's federally protected civil rights, entitling her to punitive damages.

## **Relief Requested**

WHEREFORE, Plaintiff Linda Shaw prays that this Honorable Court grant the following remedies:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the ADEA and Title VII;

b. Award Plaintiff all lost wages, past and future, to which she is entitled;

c. Award Plaintiff reinstatement or front pay;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff punitive and exemplary damages;

f. Award Plaintiff reasonable attorney's fees, costs, and interest;

g. Award such other relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this complaint.

Respectfully submitted,

|  |  |
|---|---|
|  | <u>/s/ David A. Nacht</u><br>David A. Nacht (P47034)<br>Samuel L Estenson (P82414)<br>**NACHTLAW, P.C**<br>*Attorneys for Plaintiff*<br>101 North Main St., Suite 555<br>Ann Arbor, MI 48104<br>(734) 663-7550<br>dnacht@nachtlaw.com |
| Dated: July 19, 2021 | sestenson@nachtlaw.com |

## DEMAND FOR JURY TRIAL

Now Comes Plaintiff, Linda Shaw, by and though her attorneys, NACHTLAW, P.C. and hereby demands a trial by jury in the above captioned matter.

Respectfully submitted,

/s/ David A. Nacht
David A. Nacht (P47034)
Samuel L Estenson (P82414)
**NACHTLAW, P.C.**
*Attorneys for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI 48104
(734) 663-7550
dnacht@nachtlaw.com
sestenson@nachtlaw.com

Dated: July 19, 2021